IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF VIRGINIA

Richmond Division

SHARI G.,[1]
    Plaintiff,

    v.                                            Civil No. 3:20cv333 (DJN)

KILOLO KIJAKAZI,
Acting Commissioner of Social Security,
    Defendant.

**MEMORANDUM OPINION**

On January 20, 2017, Shari G. ("Plaintiff") applied for Social Security Disability Benefits ("DIB"), alleging disability from anxiety, depression, degenerative disease, no cartilage in her right hip, migraines, carpal tunnel syndrome in both hands, bipolar tendencies, irritable bowel syndrome and social phobia, with an alleged onset date of January 1, 2013. The Social Security Administration ("SSA") denied Plaintiff's claim both initially and upon reconsideration. Thereafter, an Administrative Law Judge ("ALJ") denied Plaintiff's claim in a written decision, and the Appeals Council denied Plaintiff's request for review, rendering the ALJ's decision as the final decision of the Commissioner.

Plaintiff now seeks judicial review of the ALJ's decision pursuant to 42 U.S.C. §405(g), arguing that the ALJ erred by: (1) failing to account for Plaintiff's moderate limitation in concentration, persistence and pace; (2) failing to account for Plaintiff's need for a "rollator" and cane; (3) failing to account for Plaintiff's use of a nebulizer; (4) finding Plaintiff's migraines to

---

[1]    The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in Social Security cases, federal courts should refer to claimants only by their first names and last initials.

be nonsevere and by failing to account for them in Plaintiff's residual functional capacity ("RFC"); and, (5) rejecting Plaintiff's pain allegations at Step Two of the *Craig* pain analysis. (Pl.'s Mot. Summ. J. & Br. Supp. Thereof ("Pl.'s Br.") (ECF No. 26) at 11-18.)

For the reasons that follow, the Court hereby DENIES Plaintiff's Motion for Summary (ECF No. 24) and Motion for Remand (ECF Nos. 25), GRANTS Defendant's Motion for Summary Judgment (ECF No. 27) and AFFIRMS the final decision of the Commissioner.

## I.    PROCEDURAL HISTORY

On January 20, 2017, Plaintiff filed an application for DIB, with an alleged onset date of January 1, 2013. (R. at 20.) The SSA denied Plaintiff's claim initially on May 24, 2017, and again upon reconsideration on November 9, 2017. (R. at 111, 131.) At Plaintiff's written request, the ALJ held a hearing on February 13, 2019. (R. at 43-65, 158.) On March 12, 2019, the ALJ issued a written opinion, denying Plaintiff's claim and concluding that Plaintiff did not qualify as disabled under the Act, because she could perform jobs existing in significant numbers in the national economy. (R. at 20-33.) On April 2, 2020, the Appeals Council denied Plaintiff's request for review, rendering the ALJ's decision as the final decision of the Commissioner subject to review by this Court. (R. at 1-4.)

## II.    STANDARD OF REVIEW

In reviewing the Commissioner's decision to deny benefits, a court "will affirm the Social Security Administration's disability determination 'when an ALJ has applied correct legal standards and the ALJ's factual findings are supported by substantial evidence.'" *Mascio v. Colvin*, 780 F.3d 632, 634 (4th Cir. 2015) (quoting *Bird v. Comm'r of Soc. Sec. Admin.*, 699 F.3d 337, 340 (4th Cir. 2012)). Substantial evidence requires more than a scintilla but less than a preponderance and includes the kind of relevant evidence that a reasonable mind could accept as

adequate to support a conclusion. *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Indeed, "the substantial evidence standard 'presupposes . . . a zone of choice within which the decisionmakers can go either way, without interference by the courts. An administrative decision is not subject to reversal merely because substantial evidence would have supported an opposite decision.'" *Dunn v. Colvin*, 607 F. App'x. 264, 274 (4th Cir. 2015) (quoting *Clarke v. Bowen*, 843 F.2d 271, 272-73 (8th Cir. 1988)). As the Supreme Court has recently reminded courts, substantial evidence "means — and means only — such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019).

To determine whether substantial evidence exists, courts must examine the record as a whole, but may not "'undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [ALJ].'" *Hancock*, 667 F.3d at 472 (quoting *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005)). In considering the decision of the Commissioner based on the record as a whole, courts must consider "'whatever in the record fairly detracts from its weight.'" *Breeden v. Weinberger*, 493 F.2d 1002, 1007 (4th Cir. 1974) (quoting *Universal Camera Corp. v. N.L.R.B.*, 340 U.S. 474, 488 (1951)). The Commissioner's findings as to any fact, if substantial evidence in the record supports the findings, bind the reviewing court to affirm regardless of whether the court disagrees with such findings. *Hancock*, 667 F.3d at 472. If substantial evidence in the record does not support the ALJ's determination or if the ALJ has made an error of law, the court must reverse the decision. *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987).

The Social Security Administration regulations set forth a five-step process that the agency employs to determine whether disability exists. 20 C.F.R. § 404.1520(a)(4); *see Mascio*,

3

780 F.3d at 634-35 (describing the ALJ's five-step sequential evaluation). To summarize, at step one, the ALJ looks at the claimant's current work activity. § 404.1520(a)(4)(i). At step two, the ALJ asks whether the claimant's medical impairments meet the regulations' severity and duration requirements. § 404.1520(a)(4)(ii). Step three requires the ALJ to determine whether the medical impairments meet or equal an impairment listed in the regulations. § 404.1520(a)(4)(iii). Between steps three and four, the ALJ must assess the claimant's RFC, accounting for the most that the claimant can do despite her physical and mental limitations. § 404.1545(e). At step four, the ALJ assesses whether the claimant can perform her past work given her RFC. § 404.1520(a)(4)(iv). Finally, at step five, the ALJ determines whether the claimant can perform any work existing in the national economy. § 404.1520(a)(4)(v).

### III.   THE ALJ'S DECISION

On February 12, 2019, the ALJ held a hearing during which Plaintiff (represented by counsel) and a vocational expert ("VE") testified. (R. at 43-65.) On March 12, 2019, the ALJ issued a written opinion, finding that Plaintiff did not qualify as disabled under the Act. (R. at 20-33.)

The ALJ followed the five-step evaluation process established by the Social Security Act in analyzing Plaintiff's disability claim. (R. at 22-33.) At step one, the ALJ found that Plaintiff did not engage in substantial gainful activity between her alleged onset date and her date last insured, December 31, 2016. (R. at 22.) At step two, the ALJ determined that Plaintiff suffered from the following severe impairments: degenerative disc disease, degenerative joint disease of the right hip, obesity, anxiety disorder and depression. (R. at 22.) At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. (R. at 23.)

4

In assessing Plaintiff's RFC, the ALJ found that Plaintiff could perform sedentary work as defined in 20 C.F.R. § 404.1567(a). (R. at 25.) The ALJ determined that Plaintiff could stand or walk for up to two hours and sit without limitation over the course of an eight-hour workday. (R. at 25.) The ALJ found that Plaintiff could lift or carry up to ten pounds occasionally and less than ten pounds frequently. (R. at 25.) In the ALJ's estimation, Plaintiff could push or pull with her right lower extremity, including foot control operations. (R. at 25.) The ALJ further found that Plaintiff could occasionally climb ramps and stairs, balance, stoop and crouch, but could not kneel, crawl or climb ladders, ropes or scaffolds. (R. at 25.) The ALJ found that Plaintiff could occasionally experience exposure to cold and heat extremes, wetness, humidity, vibration, respiratory irritants and workplace hazards. (R. at 25.) The ALJ determined that Plaintiff could perform simple, routine tasks in entry-level, unskilled work that requires no more than occasional interaction with the public. (R. at 25.)

At step four, the ALJ found that Plaintiff could not perform any of her past relevant work. (R. at 31-32.) At step five, however, the ALJ determined that Plaintiff could perform jobs existing in significant numbers in the national economy. (R. at 32.) Therefore, Plaintiff did not qualify as disabled under the Act. (R. at 33.)

## IV.   ANALYSIS

Plaintiff, fifty-two years old at the time of this Memorandum Opinion, previously worked as a line leader/supervisor on a production line, cashier and store manager. (R. at 47-51.) She applied for DIB, alleging disability from anxiety, depression, degenerative disease, no cartilage in her right hip, migraines, carpal tunnel syndrome in both hands, bipolar tendencies, irritable bowel syndrome and social phobia, with an alleged onset date of January 1, 2013. (R. at 94.) Plaintiff's appeal to this Court alleges that the ALJ erred in: (1) failing to account for Plaintiff's

moderate limitation in concentration, persistence and pace; (2) failing to account for Plaintiff's

need for a "rollator" and cane; (3) failing to account for Plaintiff's use of a nebulizer; (4) finding

Plaintiff's migraines to be nonsevere and by failing to account for them in Plaintiff's RFC; and,

(5) rejecting Plaintiff's pain allegations at Step Two of the *Craig* pain analysis. (Pl.'s Br. at 11-

18.) For the reasons set forth below, the ALJ did not err in his decision.

## A.   The ALJ Properly Accounted for Plaintiff's Moderate Limitation in Concentration, Persistence and Pace.

Plaintiff argues that the ALJ erred by failing to account for Plaintiff's moderate limitation

in concentration, persistence and pace. (Pl.'s Br. at 11.) Plaintiff further argues that the RFC

must contain further restrictions than limiting the claimant to simple, routine tasks or unskilled

work, and that the ALJ failed to explain how the restriction provided relates to Plaintiff's

moderate limitation. (Pl.'s Br. at 12.)

Defendant responds that the ALJ properly evaluated the medical records to find that

Plaintiff had the mental RFC for a narrow range of simple and routine tasks in entry-level,

unskilled work that requires no more than occasional interaction with the public. (Def.'s Mot.

Summ. J. & Br. Supp. Thereof ("Def.'s Br.") (ECF No. 27) at 15.) Defendant contends that the

ALJ properly reviewed all evidence of her limitations, including a function report and multiple

mental status evaluations, and sufficiently explained why he found that this restriction accounted

for Plaintiff's moderate limitation in concentration, persistence and pace. (Def.'s Br. at 15-16.)

After step three of the ALJ's sequential analysis, but before deciding whether a claimant

can perform past relevant work at step four, the ALJ must determine the claimant's RFC. 20

C.F.R. §§ 404.1520(e)-(f), 404.1545(a)(1), 416.902(e)-(f), 416.945(a)(1). In analyzing a

claimant's abilities, the ALJ must first assess the nature and extent of the claimant's physical

limitations and then determine the claimant's RFC for work activity on a regular and continuing

basis. §§ 404.1545(b), 416.945(b). Generally, the claimant bears responsibility for providing the evidence that the ALJ utilizes in making her RFC determination; however, before determining that a claimant is not disabled, the ALJ must develop the claimant's complete medical history, including scheduling consultative examinations if necessary. §§ 404.1545(a)(3), 416.945(a)(3). The RFC must incorporate impairments supported by the objective medical evidence in the record, as well as those impairments based on the claimant's credible complaints. *Carter v. Astrue*, 2011 WL 2688975, at *3 (E.D. Va. June 23, 2011); *accord* §§ 404.1545(e), 416.945(e).

Social Security Ruling 96-8p instructs that the RFC "assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions listed in the regulations." *Mascio*, 780 F.3d at 636 (citing SSR 96-8p). The Ruling further explains that the RFC "assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (*e.g.*, laboratory findings) and nonmedical evidence (*e.g.*, daily activities, observations)." *Id.* (citing SSR 96-8p).

"Remand may be appropriate . . . where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review." *Mascio*, 780 F.3d at 636 (quoting *Cichocki v. Astrue*, 729 F.3d 172, 177 (2d Cir. 2013)). In *Mascio*, the ALJ neglected to discuss the claimant's ability to perform certain functions for a full workday — a troubling omission in light of conflicting evidence in the record. *Id.* at 637. The Fourth Circuit remanded, because the ALJ's opinion lacked the analysis required for a meaningful review and left the court "guess[ing] about how the ALJ arrived at her conclusion . . . ." *Id.* at 636-37.

7

Recently in *Shinaberry v. Saul*, the Fourth Circuit affirmed that an "ALJ cannot summarily 'account for a claimant's limitations in concentration, persistence, and pace by restricting the hypothetical question to simple, routine tasks or unskilled work,' because 'the ability to perform simple tasks differs from the ability to stay on task.'" 952 F.3d 113, 121 (4th Cir. 2020) (quoting *Mascio*, 780 F.3d at 638). However, the court in *Shinaberry* further noted that *Mascio* does not "impose a categorical rule that requires an ALJ to always include moderate limitations in concentration, persistence, or pace as a specific limitation in the RFC." *Id.* Rather, the ALJ can provide an explanation as to why the moderate limitations do not translate into a limitation in the RFC, such as stating that the limitations do not affect the claimant's ability to work. *Id.* Thus, *Shinaberry* underscores the ALJ's duty to adequately review the evidence and explain the decision. *Shinaberry*, 952 F.3d at 121; *see also Monroe v. Colvin*, 826 F.3d 176, 188 (4th Cir. 2016) (emphasizing that the ALJ must provide a sound basis for his ruling, including discussing what evidence he found credible and specifically applying the law to the record).

Because the RFC here does not address Plaintiff's moderate pace limitation, the question becomes whether the ALJ explained why Plaintiff retained the ability to work despite this limitation. *Shinaberry*, 952 F.3d at 121. This inquiry requires the Court to undertake both an analysis of the medical evidence on record and the resulting limitations imposed by the ALJ. *Sizemore v. Berryhill*, 878 F.3d 72, 80-81 (4th Cir. 2017). When medical evidence "'demonstrates that a claimant can engage in simple, routine tasks or unskilled work despite limitations in concentration, persistence, and pace, courts have concluded that limiting the hypothetical to include any unskilled work sufficiently accounts for such limitations.'" *Shinaberry*, 952 F.3d at 121 (quoting *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1180 (11th Cir. 2011)); *see also Sizemore*, 878 F.3d at 80-81 (rejecting argument that remand was

8

required under *Mascio* because the ALJ failed to specifically account for claimant's moderate difficulties with regard to concentration, persistence and pace, because more detailed medical findings provided substantial support for the RFC limitations).

### *1.    The ALJ's Discussion of Plaintiff's Limitations in Concentration, Persistence and Pace Satisfies Mascio.*

In this case, the ALJ provided an adequate link between his citation to the medical evidence and the RFC's failure to address Plaintiff's moderate pace limitations. At step three, the ALJ found that "[w]ith regard to concentrating, persisting, or maintaining pace, [Plaintiff] had a moderate limitation." (R. at 24.) To support this finding, the ALJ drew upon a form completed by Plaintiff in which Plaintiff stated that she cannot pay attention for very long and does not finish what she starts. (R. at 24.) The ALJ also acknowledged, however, that during mental status examinations, Plaintiff demonstrated average normal cognition. (R. at 24.)

After considering the record and the objective medical evidence, the ALJ concluded that Plaintiff's RFC limited her to simple, routine tasks in entry level unskilled work, requiring no more than occasional interaction with the public. (R. at 25.) In support of the RFC assessment, the ALJ discussed Plaintiff's claimed mental health impairments, noting that during mental health examinations, Plaintiff had appeared "alert, oriented times three, casually dressed with normal psychomotor activity." (R. at 28.) During examinations, Plaintiff exhibited linear and goal-directed thought processes. (R. at 28.) Moreover, she had "fair insight and judgment, and her short and long-term memory were grossly intact, with average cognition." (R. at 28.) Indeed, findings "during mental status examinations have been minimal." (R. at 29.) The ALJ also noted that Plaintiff's diagnoses had remained stable and medications had worked to treat her mental health conditions. (R. at 29.) In sum, the ALJ explained that "the claimant's statements

9

concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." (R. at 28.)

Based on this review of the medical evidence, the ALJ further concluded that the totality of the evidence failed to show that Plaintiff's limitations rose to such a level as to preclude Plaintiff from performing basic work activities, at least at the limited sedentary exertional level. (R. at 28.) Specifically, the inconsistences between Plaintiff's claimed limitations as to the severity of her symptoms and the objective evidence in the record detracted from Plaintiff's credibility. Moreover, the medical evidence showed that Plaintiff could engage in simple, routine tasks despite her claimed limitations in concentration, persistence and pace. Because the ALJ's close review of the medical record and discussion of Plaintiff's limitations properly explained why the ALJ's findings regarding Plaintiff's moderate limitations in concentration, persistence and pace did not translate into further RFC limitations, *Mascio* does not warrant remand in this case.

### 2. *Substantial Evidence Supports the ALJ's Findings Regarding Plaintiff's Ability to Maintain Concentration, Persistence and Pace.*

Importantly, not only does the ALJ's explanation regarding Plaintiff's limitations accord with the mandate of *Mascio* that an ALJ explain himself in accounting for a claimant's ability to maintain concentration, persistence and pace, substantial evidence also supports the ALJ's RFC findings regarding Plaintiff's mental abilities.

Indeed, as correctly noted by the ALJ, Plaintiff's medical sources reported that Plaintiff had fair insight and judgment, grossly intact short-term and long-term memory, linear and goal-directed thought processes and average cognition during mental health evaluations. (R. at 600, 603, 606, 609, 612, 615, 629, 632, 634.) During eighteen appointments throughout 2015 and 2016, medical records noted that Plaintiff presented as "alert and oriented." (R. at 509, 513, 521,

10

530, 562, 574, 583, 587, 600, 603, 606, 609, 612, 615, 618, 629, 632, 634.)  During an emergency room visit on June 24, 2015, medical staff received a "good history from patient." (R. at 884.)  On June 19, 2016, medical records described Plaintiff as "able to follow commands" and possessing "memory appropriate to stated age."  (R. at 670.)  For a November 25, 2016 appointment, doctors described Plaintiff's remote and recent memory as "intact."  (R. at 648.) Only once does the record mention Plaintiff providing "subdued and delayed responses to questions."  (R. at 474.)  Additionally, Plaintiff repeatedly reported that her medications helped treat her symptoms.  (R. at 600, 603, 606.)  The ALJ further emphasized that Plaintiff's "mental examination, diagnoses, and medications remained stable in September 2016, and November 2017," a finding that the record supports.  (R. at 629-35.)  Finally, Plaintiff stated during her November 2017 visit that "she quit her job as it was stressful for her" without any mention that her claimed mental impairments affected her ability to work.  (R. at 634.)

Additionally, Plaintiff's reported daily activities also supported the ALJ's conclusion that Plaintiff does not suffer from more severe limitations in concentration, persistence and pace that warrant a further restriction in her RFC.  Although in March 2017 Plaintiff reported that she experienced issues with short-term memory loss, Plaintiff also reported that she retained the ability to watch television, care for her hair, feed herself and go grocery shopping.  (R. at 299, 301.)  She reported that she could prepare food for herself for meals.  (R. at 300.)  Because both the objective medical records and Plaintiff's own reports also substantiate the ALJ's findings that Plaintiff's moderate limitations do not necessitate further restrictions in the RFC, the Court finds no grounds for remand on this issue.

**B.      The ALJ Did Not Err by Excluding an Assistive Walking Device from Plaintiff's RFC.**

Plaintiff argues that the ALJ erred by failing to account for Plaintiff's need for a "rollator" and cane in the RFC. (Pl.'s Br. at 14.) Specifically, she contends that the ALJ erred by rejecting statements from Plaintiff's stepson and husband that explain Plaintiff's need for a cane or walker. (Pl.'s Br. at 14.) Defendant argues that the record lacks medical evidence to support Plaintiff's need for a rollator and, thus, the ALJ did not need to include further limitations for a rollator in the RFC. (Def.'s Br. at 17-18.) Furthermore, Defendant states that any mention of a rollator in the record do not appear until approximately two years after Plaintiff's Date Last Insured (DLI) and, therefore, have no relevance to the instant review. (Def.'s Br. at 17.)

The ALJ's RFC findings should include limitations that find support in the record. *Johnson*, 434 F.3d at 659.  Use of a hand-held assistive walking device, like a cane, may affect an individual's RFC by limiting her ability to lift, carry, push and pull. *Fletcher v. Colvin*, 2015 WL 4506699, at *8 (M.D.N.C. July 23, 2015) (citing 20 C.F.R. Pt. 404, Subpt. P, App'x 1, § 1.00(J)(4)).  However, the ALJ need only consider "medically required" assistive walking devices when making the RFC assessment.  *Id.* (quoting SSR 96-9p).

To establish a medical requirement, the claimant must present medical documentation (1) supporting her need for an assistive walking device, and (2) describing the circumstances that require it.  *Id.*  The ALJ then "must always consider the particular facts of a case."  *Wimbush v. Astrue*, 2011 WL 1743153, at *2 (W.D. Va. May 6, 2011) (quoting SSR 96-9p).  Given the fact-specific nature of the ALJ's inquiry, neither a prescription for a cane, nor the lack thereof, necessarily determines whether the claimant medically requires an assistive device.  *Fletcher*, 2015 WL 4506699, at *8 (citing *Staples v. Astrue*, 329 F. App'x 189, 191-92 (10th Cir. 2009));

12

*Wimbush*, 2011 WL 1743153, at \*2-3 (citing SSR 96-9p) (additional citations omitted). The claimant must provide documentation from an approved medical source to establish the basis for her impairment and subsequent need for an assistive walking device. 20 C.F.R §§ 404.1513, 416.913; *see also Johnson v. Berryhill*, 2017 WL 722063, at \*9 (W.D. Va. Feb. 23, 2017) ("[S]elf-reports and references in the record from physicians that a claimant presented with an assistive device are not sufficient; there must be 'an unambiguous opinion from a physician stating the circumstances in which an assistive device is medically necessary.'") (quoting *Tripp v. Astrue*, 498 Fed. App'x 951, 955 (7th Cir. 2012)); *Staples*, 329 Fed. App'x at 192 (finding that a doctor's statement that the plaintiff used a cane did not suffice to establish medical necessity). If the claimant fails to supply appropriate documentation, the ALJ need not include the use of an assistive walking device in the RFC assessment. *Fletcher*, 2015 WL 4506699, at \*8.

Moreover, claimants must point to limitations that occurred during the period under review, as a claimant "must prove that she became disabled prior to the expiration of her insured status." *Johnson*, 434 F.3d at 655-56. Medical evidence created after the claimant's DLI only bears relevance to a disability before the DLI to the extent that the claimant establishes that the "evidence could be reflective of a possible earlier and progressive degeneration." *Bird v. Comm'r of S.S.A.*, 699 F.3d 337, 341 (4th Cir. 2012). Without such a linkage to the pre-DLI condition, the post-DLI evidence bears no relevance and the ALJ need not give it retrospective consideration. *Id.*

Here, the ALJ properly excluded the use of a cane or rollator from the RFC, because no existing evidence showed that Plaintiff medically required either device during the period under review. The ALJ acknowledged Plaintiff's testimony as to her difficulties with sitting and standing. (R. at 26.) Plaintiff stated in a function report that she used a walker and cane but

noted that a doctor did not prescribe either aid. (R. at 304.) On her appeal form, Plaintiff stated that she used a cane every day to walk. (R. at 352.) Plaintiff stated on Form SSA-3373, completed October 22, 2017, that she used a cane prescribed to her two years ago "all the time." (R. at 340.) However, no medical evidence supports Plaintiff's assertion that a doctor prescribed a cane in 2015. Plaintiff's testimony fails to meet the burden of documenting the medical necessity of any assistive walking device.

As further support for her use of a cane, Plaintiff points to the testimony of her husband and stepson on their respective third-party function reports-adult, completed in March of 2017. (Pl.'s Br. at 14; R. at 287, 309.) Plaintiff's stepson indicated that Plaintiff used a walker and cane for maneuvering around the house. (R. at 285.) Plaintiff's husband also stated that she used a walker and cane, neither prescribed to her. (R. at 317.) The ALJ reviewed the opinions of the husband and stepson but gave them little weight, because they amounted to "lay opinions based on casual observation" and contradicted findings during medical evaluations that found that Plaintiff could effectively ambulate without the aid. (R. at 31.)

Although two medical sources opined that Plaintiff used a cane during the relevant period, these sources do not establish the necessity of any assistive walking device. On July 19, 2016, Dr. Evelyn Scott noted that Plaintiff had limited mobility and used a cane. (R. at 477.) Nurse practitioner, Carolyn Leach, described Plaintiff using a cane in her report of an August 3, 2016 visit. (R. at 516.) However, both sources simply noted that they observed that Plaintiff chose to use a cane. Neither source prescribed a cane, supplied evidence that Plaintiff medically required an assistive walking device or described the circumstances under which Plaintiff needed to use a cane.

14

No other medical reports mention Plaintiff's use of a cane until an appointment with nurse practitioner, Michelle Morrison, on March 10, 2017. (R. at 721.) During this appointment, Plaintiff stated that she wanted a cane. (R. at 721-22.) Morrison prescribed a three-pronged cane for Plaintiff. (R. at 723, 794.) During an appointment on November 27, 2018, Morrison noted that Plaintiff used a rollator to prevent falls and assist with ambulation and mobility. (R. at 1001, 1003.) During the February 13, 2019 hearing before the ALJ, Plaintiff testified that a doctor had prescribed a rollator for her, which she used for seven months. (R. at 53.) However, the prescription for the cane and the documentation of Plaintiff's use of a rollator both fall outside of the period under review — June 2, 2015 through December 31, 2016. (R. 30.)

Thus, the ALJ properly found no support for a medically required cane or rollator during this period. Plaintiff did not supply appropriate documentation from an approved medical source as required under *Fletcher* to support her claimed need for a cane or rollator during the relevant period. *Fletcher*, 2015 WL 4506699, at \*8. As the ALJ noted, Plaintiff's statements do not correlate with the objective medical evidence, which does not demonstrate the medical necessity of a cane or rollator. (R. at 29.) Because Plaintiff failed to produce medical evidence supporting her need for an assistive walking device and describing the circumstances that require one during the relevant period, the ALJ did not err by excluding the use of an assistive walking device in the RFC.

## C.    The ALJ Properly Excluded the Use of a Nebulizer in Plaintiff's RFC.

Plaintiff argues that the ALJ erred by failing to account for Plaintiff's use of a nebulizer. (Pl.'s Br. at 14.) Plaintiff further asserts that the ALJ failed to account for Plaintiff's time off task as a result of using a nebulizer in both the RFC and in the hypothetical. (Pl.'s Br. at 15.)

15

Defendant responds that no medical source suggests that Plaintiff experienced work-preclusive limitations from nebulizer use. (Def.'s Br. at 17.)

As discussed above, the ALJ must determine the claimant's RFC after step three of the sequential analysis. 20 C.F.R. §§ 404.1502(e)-(t), 404.1545(a)(1), 416.902(e)-(t), 416.945(a)(1). Generally, the claimant shoulders the responsibility for providing the evidence that the ALJ utilizes in making his RFC determination; however, before determining that a claimant does not have a disability, the ALJ must develop the claimant's complete medical history, including scheduling consultative examinations if necessary. 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3). The RFC must incorporate impairments supported by the objective medical evidence in the record, as well as those impairments based on the claimant's credible complaints. *Carter v. Astrue*, 2011 WL 2688975, at \*3 (E.D. Va. June 23, 2011); *accord* 20 C.F.R. §§ 404.1545(e), 416.945(e).

Here, the ALJ considered the relevant evidence of Plaintiff's nebulizer use and included Plaintiff's nebulizer treatment on June 30, 2016, in his review. (R. at 26, 522.) The ALJ noted that the doctor assessed Plaintiff with COPD and performed an upper respiratory treatment during this appointment. (R. at 26.) The medical record states that Plaintiff received this treatment for wheezing, asthma and coughing. (R. at 522.) After the nebulizer treatment, Plaintiff's "lung sounds improved" and she experienced "less wheezing." (R. at 522.)

Plaintiff points to other mentions of a nebulizer in the record as evidence that the ALJ failed to account for this limitation. (Pl.'s Br. at 15.) Specifically, she points to her May 5, 2018 visit with nurse practitioner, Michelle Morrison, to treat wheezing that Plaintiff had experienced starting the previous day. (R. at 796). Morrison prescribed albuterol nebulizer solution for Plaintiff's cough and wheezing. (R. at 796-97.) During subsequent appointments from July 11,

2018, to January 25, 2019, Morrison continued this treatment and refilled Plaintiff's prescriptions for the nebulizer solution. (R. at 809, 929, 993-94, 1001-02, 1005-06, 1012.)

However, each of these treatments occurred more than a year after the period under review, and Plaintiff did not demonstrate how they constituted a limitation during the relevant period. Apart from the June 2016 nebulizer treatment, Plaintiff's nebulizer use occurred after the period under review — June 2, 2015 through December 31, 2016. (R. 30.) Plaintiff did not provide any evidence that she needed a nebulizer during this period or that her use would limit her ability to work. Therefore, the ALJ properly reviewed the relevant evidence and substantial evidence from the record supports his exclusion of nebulizer use from the RFC.

### D. Substantial Evidence Supports the ALJ's Classification of Plaintiff's Migraines as Nonsevere.

Plaintiff argues that the ALJ erred by finding Plaintiff's migraines to be nonsevere and by failing to account for them in the RFC. (Pl.'s Br. at 16.) Plaintiff further contends that the ALJ did not consider the veracity of Plaintiff's migraine pain allegations. (Pl.'s Br. at 17.) Defendant counters that the ALJ appropriately found Plaintiff's migraines to be non-severe, because they did not require significant medical treatment, responded to medication and did not result in any functional limitations. (Def.'s Br. at 19.)

At step two, the ALJ must consider the claimant's medically determinable impairments. 20 C.F.R. §§ 404.1520(a)(4)(ii), 404.1521, 416.920(a)(4)(ii), 416.921. "The Supreme Court has held that this step of the disability evaluation is a *de minimis* threshold." *Williams v. Astrue*, 2010 WL 395631, at *14 (E.D. Va. Feb. 2, 2010), *report and recommendation adopted*, at *1 (citing *Bowen v. Yuckert*, 482 U.S. 137, 146-47 (1987)).

An ALJ can satisfy step two by finding a severe impairment and then proceeding through the rest of the sequential analysis. *McCormick v. Soc. Sec. Admin., Comm'r*, 619 F. App'x 855,

17

858 (11th Cir. 2015); *Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir. 1987) ("[T]he finding of any severe impairment, whether or not it qualifies as a disability and whether or not it results from a single severe impairment or a combination of impairments that together qualify as severe, is enough to satisfy the requirement of step two.")  Plaintiff has the burden of demonstrating that she has an "impairment or combination of impairments which significantly limits [her] physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c), 416.920(c); *Bowen*, 482 U.S. at 146.  The claimant's impairment "must have lasted or must be expected to last for a continuous period of at least 12 months." 20 C.F.R. §§ 404.1509, 416.909.

A severe impairment causes more than a minimal effect on one's ability to function. § 404.1520(c).  Likewise, "[a]n impairment or combination of impairments is not severe if it does not significantly limit [one's] physical or mental ability to do basic work activities." § 404.1522(a).  An ALJ will find a claimant not disabled at step two if she "do[es] not have a severe medically determinable physical or mental impairment that meets the duration requirement . . , or a combination of impairments that is severe and meets the duration requirement." § 404.1520(a)(4)(ii).

Here, the ALJ found Plaintiff's migraines to be nonsevere, because they responded to medication and treatment, did not require significant medical treatment and did not result in any continuous exertional or non-exertional functional limitations. (R. at 23.)  Substantial evidence supports the ALJ's evaluation of Plaintiff's migraines.

For one, the ALJ correctly found that Plaintiff's migraines responded to medication and treatment in accordance with the medical evidence on record. (R. at 23.)  Dr. Jeffrey Hively assessed Plaintiff's migraines on June 22, 2015, as "without intractable migraine," suggesting that they would respond to medication and treatment. (R. at 534.)  And, each of Plaintiff's

18

migraine diagnoses noted a lack of intractable migraine. (R. at 547, 583, 596.) In fact, Plaintiff's migraine medications did help her. For instance, during a September 9, 2015 appointment, Plaintiff stated that her current migraine medications helped her. (R. at 600.) And, on November 11, 2015, and January 27, 2016, Plaintiff reported that her medications continued to help her. (R. at 603, 606.)

Substantial evidence in the record also supports the ALJ's finding that Plaintiff's migraines did not require significant medical treatment. (R. at 23.) While Plaintiff did visit the emergency room for headaches, her issues "resolved" after treatment. (R. at 664-66.) Additionally, on June 25, 2016, Plaintiff visited Community Memorial Hospital for an "aching" headache. (R. at 664.) After treatment, Plaintiff's pain "improved markedly," her symptoms "resolved" and the hospital discharged her that same day. (R. at 664-66.)

The ALJ also appropriately found that Plaintiff's migraines did not result in any continuous exertional or non-exertional functional limitations. (R. at 23.) Plaintiff testified that she experienced "at least two" migraines a week that put her in bed. (R. at 54.) However, Plaintiff provides no further evidence that her migraines resulted in a limitation on her ability to perform work-related functions.

Plaintiff points to no evidence to support her claim that her migraines caused more than a minimal effect on her ability to function and substantial evidence supports the ALJ's classification of Plaintiff's migraines as nonsevere. Substantial evidence also supports the ALJ's assessment, because they responded to medication and treatment, did not require significant medical treatment and did not result in any continuous exertional or non-exertional functional limitations. Accordingly, the ALJ did not err in finding Plaintiff's migraines to be non-severe.

E.    **The ALJ Correctly Performed Step Two of the *Craig* Pain Analysis by Evaluating the Full Record to Find That Plaintiff's Limitations Did Not Preclude Her from Performing Basic Work Activities.**

Plaintiff argues that the ALJ erred in Step Two of the *Craig* pain analysis, because the ALJ found that the objective medical evidence showed that Plaintiff had an impairment that is "reasonably likely" to cause the pain alleged in the amount and degree alleged, but did not explain why Plaintiff did not actually experience the back and leg pain alleged. (Pl.'s Br. at 18-19.) Plaintiff also contends that the ALJ failed to apply and consider his Step One finding in Step Two. (Pl.'s Br. at 19.) Finally, Plaintiff asserts that the ALJ did not properly consider Plaintiff's credibility or the observations of her family members. (Pl.'s Br. at 20-21.) Defendant responds that substantial evidence supports the ALJ's pain analysis and that the ALJ properly considered whether the alleged pain affected Plaintiff's ability to work. (Def.'s Br. at 21, 23.) Defendant also argues that the ALJ fully evaluated the medical record and explained that Plaintiff made inconsistent statements about her limitations. (Def.'s Br. at 23-24.)

When evaluating a claimant's subjective symptoms in the context of an RFC determination, the ALJ must follow a two–step analysis. *Craig*, 76 F.3d at 594; 20 C.F.R. §§ 404.1529(a), 416.929(a); SSR 16-3p, 2016 WL 1119029 (Mar. 16, 2016)). The first step requires the ALJ to determine whether there exists an underlying medically determinable physical or mental impairment that reasonably could produce the individual's pain or other related symptoms. *See* SSR 16-3p, 2016 WL 1119029, at *3.

If the underlying impairment reasonably could be expected to produce the individual's symptoms, then the second part of the analysis requires the ALJ to evaluate a claimant's "symptoms . . . and determine the extent to which an individual's symptoms limit his or her ability to perform work related activities." SSR 16-3p, 2016 WL 1119029, at *4. The ALJ's

step-two evaluation must first consider the consistency between a claimant's statements and the objective medical evidence. *Id.* at *5. Unless the ALJ can determine that a claimant qualifies as disabled based solely on objective medical evidence, the ALJ must also consider other sources of evidence to determine consistency, including "statements from the [claimant], medical sources, and other sources that might have information about the [claimant's] symptoms." *Id.* at *5-7. Based on the degree of consistency between a claimant's statements and the evidence of record, the ALJ should find either a higher or lower likelihood that the claimant can perform work-related activities. *Id.* at *8.

Here, the ALJ stated that "after careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimants statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence and the other evidence in the record." (R. at 28.) The ALJ properly followed the two-step process in determining (1) whether Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms; and, (2) whether Plaintiff's statements concerning the intensity, persistence and limiting effects were consistent with the medical or other evidence of record. 20 C.F.R. § 404.1529; *Craig*, 76 F. 3d at 594-95.

At Step One, the ALJ reviewed the objective medical evidence and found that Plaintiff's medically determinable impairments could reasonably cause the alleged symptoms. (R. at 28.) However, at step two, the ALJ found that the Plaintiff's "statements concerning the intensity persistence and limiting effects" of those symptoms lacked consistency with the medical and other evidence in the record. (R. at 28.) In making this finding, the ALJ reviewed Plaintiff's statements about the intensity, persistence and limiting effects of her symptoms and evaluated

21

her claims in relation to evidence from objective medical sources, statements from Plaintiff's husband and stepson, the previous ALJ decision denying benefits in 2015 and opinion evidence from DDS physicians. (R. at 28-30.) The ALJ accordingly found that the totality of the evidence failed to show that Plaintiff's pain precluded her from performing basic work activities, especially at the sedentary exertional level. (R. at 29.)

At Step Two, the ALJ considered all of Plaintiff's testimony about her alleged limitations. (R. at 29.) The ALJ first considered Plaintiff's testimony that she could not work due to tremors in her hands. (R. at 25, 53.) The ALJ found that while Plaintiff claimed that she could hardly lift objects due to these tremors, her neurological examinations did not note these tremors. (R. at 29, 53, 474, 509, 513, 517, 648, 665.) Plaintiff testified that she had no cartilage in her right hip and six discs in her spine that press on her sciatic nerve, sending "excruciating pain" down to her legs. (R. at 53.) Plaintiff further testified that she could not sit or stand for a long period of time. (R. at 54.) Plaintiff also testified that she had "excruciating migraines" at least twice a week but, during the relevant period, she only received emergency room treatment once in June of 2016 for an "aching headache." (R. at 29, 54, 664-66.) The ALJ compared this testimony with the "totality of the evidence" to find that no other evidence substantiated her claims as to the degree and intensity of her limitations, nor that any limitation precluded her from performing basic work activities, "at least on the sedentary exertional level." (R. at 29.) The ALJ correctly considered Plaintiff's testimony along with every other type of evidence and did not determine her credibility on objective medical evidence alone. Instead, his opinion considered each source of evidence in turn before finding inconsistency in Plaintiff's statements. (R. at 28-31.)

First, the ALJ reviewed the relevant diagnostic testing, including an August 2016 MRI of Plaintiff's lower spine and a CT scan of her pelvis and right hip. (R. at 28-29.) The ALJ then compared these diagnostic findings with Plaintiff's physical status examinations. (R. at 29.) During these examinations, Plaintiff demonstrated an ability to effectively ambulate and showed that she possessed normal strength and neurological responses. (R. at 29.) During a June 24, 2015 emergency room visit, Plaintiff could "ambulate to bathroom without difficulty" and possessed a "normal ambulatory status." (R. 884.) During a June 25, 2016 appointment, Plaintiff possessed a full range of motion with no evidence of weakness and no gait disturbance. (R. at 665.) During an ER visit on July 7, 2016, Plaintiff again possessed a "normal ambulatory status." (R. at 861.) The ALJ properly compared this evidence with Plaintiff's statements and accordingly limited Plaintiff to work at the sedentary exertional level. (R. at 27-28, 30.)

The ALJ also evaluated Plaintiff's mental status evaluations. (R. at 29.) During these evaluations, Plaintiff appeared alert and oriented with normal psychomotor activity, normal speech, average cognition and fair insight. (R. at 29.) The ALJ's characterization of these examinations finds substantial support in the record. During eighteen appointments throughout 2015 and 2016, medical records noted that Plaintiff presented as "alert and oriented." (R. at 509, 513, 521, 530, 562, 574, 583, 587, 600, 603, 606, 609, 612, 615, 618, 629, 632, 634.) Medical appointment records also described Plaintiff as a woman with "short and long-term memory grossly intact," fair insight, fair judgment and average cognition. (R. at 600, 603, 606, 609, 612, 615, 629, 632, 634.) During an emergency room visit on June 24, 2015, medical staff received a "good history from patient." (R. at 884.) On June 19, 2016, medical records described Plaintiff as "able to follow commands" and possessing "memory appropriate to stated age." (R. at 670.) For a November 25, 2016 appointment, doctors described Plaintiff's remote and recent memory

as "intact." (R. at 648.) Only once does the record mention Plaintiff providing "subdued and delayed responses to questions." (R. at 474.)

The ALJ then reviewed Plaintiff's treatment regimen. (R. at 29.) The ALJ described this regimen as "routine, conservative and unremarkable." (R. at 29.) Doctors treated Plaintiff's degenerative disc disease and degenerative joint disease with injections and medications, including Bentyl, Zanaflex, Percocet and Gabapentin. (R. at 507, 518, 536, 662.) Plaintiff also took several medications for her mental health impairments: Klonopin, Cymbalta, Wellbutrin, Lithium, Haldol, Cogentin and Lamictal. (R. at 600-02, 609.) On July 19, 2016, Dr. Evelyn Scott discussed a total joint replacement with Plaintiff as an end-stage surgical treatment. (R. at 481.) Dr. Scott provided information on a total hip arthroplasty and stated in her notes that she "would like [Plaintiff] to see Dr. Harandi for discussion of a total hip replacement." (R. at 481.) While Dr. Scott provided information on a hip replacement to Plaintiff as a possible treatment for her pain, she did not explore this course of treatment further with Plaintiff. (R. at 481.) The ALJ noted that while Plaintiff did receive treatment in the emergency room on several occasions, she did not require hospitalization, intensive treatments or surgical intervention for her impairments during the period under review. (R. at 29.) On each of her visits to the emergency room, doctors discharged Plaintiff the same day with her symptoms improved or "resolved." (R. at 647-49, 652-54, 660-62, 664-66, 669-71, 679-81, 688-90, 696-97.) Plaintiff's medication regime, the lack of surgical interventions and the lack of significant emergency room treatment support the ALJ's description of Plaintiff's treatment as "routine, conservative and unremarkable." (R. at 29.)

The ALJ then reviewed the opinion evidence from DDS physicians. (R. at 29.) The initial DDS physicians opined that insufficient evidence existed for an evaluation of Plaintiff's

physical impairments. (R. at 29, 103.) DDS physicians also opined that Plaintiff had a history of auditory hallucinations, but recent mental findings showed that she could complete simple, repetitive tasks. (R. at 29, 104.) On reconsideration, the DDS physicians opined that Plaintiff could lift up to ten pounds occasionally and less than ten pounds frequently, could stand/walk two hours in an eight-hour workday and could sit six hours in an eight-hour workday. (R. at 29, 127.) DDS physicians limited Plaintiff to occasional push/pull activities with the right lower extremity and opined that she should avoid concentrated exposure to extreme cold, vibration, fumes, odors, dusts, gases, poor ventilation and hazards. (R. at 29, 127-28.) DDS physicians further opined that Plaintiff should never crawl or climb ladders, ropes or scaffolds, but Plaintiff could occasionally climb ramps and stairs, balance, stoop, kneel and crouch. (R. at 29, 127.) The ALJ gave the initial DDS physicians' opinions little weight due to their inconsistency with the objective medical record, including Plaintiff's reports of seeing shadows and hearing voices during mental status examinations. (R. at 29-30.) The ALJ gave the opinion of DDS physicians on reconsideration great weight due to their balance, objectivity and consistency with the objective medical record. (R. at 30.) Specifically, the ALJ noted that the MRI and CT scans showed limitations to the sedentary exertional level. (R. at 30.)

In accordance with Fourth Circuit caselaw and Social Security Acquiescence Ruling (AR) 00-1(4), the ALJ considered the July 2, 2015 ALJ decision. (R. at 30.) The 2015 decision found that Plaintiff possessed the RFC to perform sedentary work as defined in 20 C.F.R. 404.1567(a) and 416.967(a), except that she could not crawl or climb ladders, ropes or scaffolds. (R. at 30, 74.) She could occasionally climb ramps and stairs, balance, stoop, kneel and crouch. (R. at 30, 74.) She should avoid concentrated exposure to extreme cold and heat, wetness, humidity, vibration and hazards in the workplace. (R. 30, 74.) The 2015 ALJ decision found

25

that Plaintiff retained the ability to perform simple, unskilled work on a sustained basis in a competitive work environment where there is no more than occasional interaction with the general public. (R. at 30, 74.) The ALJ gave this decision great weight because of its consistency with the objective medical record, including the MRI and CT scans, which indicated limitations to the sedentary exertional level. (R. at 30.)

The ALJ also considered the evidence provided by Plaintiff's husband and stepson. (R. at 30-31.) Plaintiff's stepson completed a third-party function report wherein he stated that Plaintiff could walk ten to twenty feet before needing to rest for five to ten minutes, could pay attention for a short time and required a walker or cane to maneuver around her home. (R. at 30, 284-85.) Plaintiff's husband completed the same report wherein he opined that Plaintiff could walk five to ten feet before needing to rest for a short time, could only pay attention for short periods of time and used a walker or cane at home and an electric cart when shopping in stores. (R. 30-31, 316-17.) The ALJ gave these opinions little weight, because they represented lay opinions based on casual observation. (R. at 31.) The ALJ found that these opinions did not outweigh the accumulated medical evidence and did not comport with findings made during physical and mental examinations. (R. at 31.)

The ALJ reviewed the consultative examination performed by Dr. Salman Gohar in September 2013. (R. at 31.) Dr. Gohar found that Plaintiff could lift/carry less than twenty pounds occasionally and ten pounds frequently, stand and walk less than six hours in an eight-hour workday, sit six hours in an eight-hour workday and, despite moderate postural limitations, Plaintiff did not need any assistive device for ambulation. (R. at 31, 101-02.) The ALJ gave this opinion less weight due to its remoteness from the period under review. (R. at 31.) The ALJ found that Dr. Gohar's opinion concerning Plaintiff's ability to sit and lack of need for an

26

assistive walking device corresponded to findings in physical examinations during the relevant period.  (R. at 31.)  However, the ALJ found that new evidence from the MRI and CT scans indicated a need for limitations to the sedentary exertional level with limitations on standing and walking.  (R. at 31.)

Finally, the ALJ discussed GAF scores provided throughout the record and gave these scores little weight.  (R. at 31.)  The ALJ noted that the American Psychiatric Association eliminated the use of this scale in 2013 due to their "lack of clarity" and "questionable psychometrics in routine practice."  (R. at 31.)  Due to the highly subjective nature of this measure, the ALJ found that the GAF scores did not provide a good indicator of Plaintiff's long-term mental health functioning ability.  (R. at 31.)

The ALJ properly reviewed all of the evidence to evaluate whether Plaintiff's symptoms limited her ability to perform work-related activities as required by SSR 16-3p.  The ALJ found Plaintiff's statements inconsistent with the objective medical record, which included her course of treatment, diagnostic testing and physical and mental examinations.  (R. at 28-29.)  The ALJ additionally considered the 2015 ALJ decision, DDS physician opinions, the testimony of Plaintiff's husband and stepson, Dr. Gohar's 2013 opinion and Plaintiff's GAF scores.  (R. at 28-31.)  The ALJ explained the weight that he gave to each source and did not solely rely on the objective medical evidence to find inconsistency in Plaintiff's statements.  Accordingly, the Court finds that the ALJ did not err with respect to this issue.

## V.    CONCLUSION

For the reasons set forth above, the Court DENIES Plaintiff's Motion for Summary

Judgment (ECF No. 24) and Motion to Remand (ECF No. 25), GRANTS Defendant's Motion for

Summary Judgment (ECF No. 27) and AFFIRMS the final decision of the Commissioner.

An appropriate order will issue.

Let the Clerk file a copy of this Memorandum Opinion electronically and notify all

counsel of record and any unrepresented party.

/s/

David J. Novak
United States District Judge

Richmond, Virginia
Date: September 7, 2021